UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.  Case No. 2:16cr130

ANTONIO SIMMONS, *et al.*,

    Defendants.

**REPORT AND RECOMMENDATION**

This matter arises from a Second Superseding Indictment filed on August 23, 2017 ("the Indictment"), wherein it is alleged that Defendants Antonio Simmons ("Defendant Simmons"), Nathaniel Tyree Mitchell ("Defendant Mitchell"), and Malek Lassiter ("Defendant Lassiter") ("collectively "Defendants") are members of the Nine Trey Gangsters ("NTG"), reportedly a criminal street gang that is part of the "United Blood Nation," a collective of East Coast-based Bloods gangs, which the Indictment alleges is a racketeering enterprise engaged in acts of murder, maiming, assault with firearms, and narcotics distribution. Specifically, the Indictment (ECF No. 121) charges Defendants with thirty-eight (38) counts related to their alleged participation in the affairs of NTG from the Fall of 2010 until August 23, 2017, to include a pattern of racketeering and individual, substantive crimes, punishable under various federal statutes, including the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and Violent Crimes in Aid of Racketeering statute ("VICAR").

Before the Court are two substantive pretrial Motions (a Motion to Exclude and a Motion to Strike), and three corresponding Motions to Adopt, all of which require disposition prior to a

jury trial on February 6, 2018.[1] These Motions were referred to the undersigned United States Magistrate Judge ("the undersigned") for a Report and Recommendation pursuant to a Referral Order from the United States District Judge. ECF No. 225; *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. For the foregoing reasons, the undersigned **RECOMMENDS** the following dispositions of the Motions[2]:

- Defendant Mitchell's Motion to Exclude Letter (ECF No. 139) should be **DENIED**.

- Defendant Lassiter's Motion to Adopt Mitchell's Motion to Exclude Letter (ECF No. 173) should be **GRANTED** as to the adoption, but **DENIED** as to the merits.

- Defendant Simmons' Motion to Strike Surplusage from Second Superseding Indictment (ECF No. 146) should be **DENIED**.

- Defendant Mitchell's Motion to Adopt Simmons' Motion to Strike Surplusage (ECF No. 157) should be **GRANTED** as to the adoption, but **DENIED** as to the merits.

- Defendant Lassiter's Motion to Adopt Simmons' Motion to Strike Surplusage (ECF No. 170) should be **GRANTED** as to the adoption, but should be **DENIED** as to the merits.

## I. MOTIONS

Given the number of pending Motions, and in the interest of clarity, the Court will address each substantive Motion (ECF Nos. 139 and 146) and corresponding Motions to Adopt (ECF Nos. 157, 170, and 173) separately.

### A. <u>Defendant Mitchell's Motion to Exclude Letter (ECF No. 139)</u>

In January 2016, while incarcerated in the Portsmouth City Jail after being arrested on state robbery charges that would ultimately be prosecuted in federal court, Defendant Mitchell wrote a letter to his girlfriend. In his Motion and Memorandum in Support (ECF Nos. 139-40),

---

[1] Other pending Motions not specifically addressed in the instant Report and Recommendation will be the subject of a separate Report and Recommendation and an Order.
[2] The undersigned makes this ruling without a hearing pursuant to Fed. R. Civ. P. 78(b) and E.D. Va. Local Civ. R. 7(J).

Defendant Mitchell seeks the exclusion of this letter. Defendant Lassiter joins in this request (ECF No. 173). For the purposes of this R&R, the Court will refer to this January 2016 letter as "the Mitchell Letter." The Mitchell Letter provides, in pertinent part:

> I need Bro and whoeva [sic] else to be at my court date so y'all can view the b*tch that will testify on us. She will be there. I was hoping that someone could at least put some fear in her heart so she wouldn't come to trial on us. Somehow follow her and catch her by herself and find out where she stay or be at. Let her know that if she shows up again that she will be dealt with. Or just kill the b*tch. (That's up to Bro). They have EVERYTHING! The jackets we wore, the bandana's we wore, the money we took, and the two Jim J's. Bro had the 40 clip in his pocket and the other two 380 Bullets in his pocket.... [W]e ran he threw the jim jay but they found it in his area. So that right there should tell you enough.

Case No. 2:16-cr-20, ECF No. 32 at 3, ¶ 5.[3] By way of background, Defendant Mitchell was initially arrested and charged for the December 27, 2015 robbery of a Shell gas station in Portsmouth, Virginia sometime around January 2016. Allegedly, while incarcerated in Portsmouth City Jail, Defendant Mitchell wrote a letter stating that another gang member should threaten or kill the Shell gas station clerk before she could testify against Defendant Mitchell and Anthony Derrell Foye ("Foye"), another NTG member and former Co-Defendant in the instant case.[4] In February 2016, Defendant Mitchell and Foye were indicted in federal court in Case No. 2:16-cr-20. Ultimately, on April 18, 2016, Defendant Mitchell pleaded guilty to all four counts

---

[3] The entire Mitchell Letter was filed under seal by the Government. ECF No. 198. This quoted portion of the Mitchell Letter was included in both the unsealed Statement of Facts filed pursuant to Defendant Mitchell's guilty plea in a related case, see Case No. 2:16-cr-20, ECF No. 32 at 3, ¶ 5, and in the Presentence Investigation Report in that case. Defendant Mitchell signed the Statement of Facts, and at his plea colloquy agreed that it was accurate and that there was nothing therein that he objected to. Regarding the sealed Letter, ECF No. 198, an additional part of the Letter references other circumstances which may be considered probative of potential threats or intimidation to witnesses, but discussion of these additional statements is not necessary for the resolution of this Motion.

[4] The Court notes that former Co-Defendant Foye has filed a Motion to Withdraw Guilty Plea (ECF No. 244), with the assistance of independent counsel appointed by the Court. Therein, Foye alleges that his plea was not voluntary because his attorneys were focused on maneuvering him to be the first defendant to plead and avoid the death penalty. The Government had not received authority to seek the death penalty at the time of Foye's guilty plea. Because the death penalty authorization process had not concluded, it was unknown whether the Department of Justice would authorize the Government to seek the death penalty against Foye or any of the Defendants. Accordingly, Foye pleaded guilty to four of the murders in aid of racketeering in exchange for the Government not seeking the death penalty against him. A hearing on the Motion to Withdraw Guilty Plea is set for January 4, 2018.

3

of the indictment without a plea agreement, and was later sentenced to a total period of one hundred and forty-four (144) months of active incarceration. Subsequently, in the Indictment filed in the instant case, Defendant Mitchell was charged with various offenses including a racketeering conspiracy. The December 27, 2015 Shell robbery is listed as overt acts "v" and "w" in Count I of the Indictment. ECF No. 121 at 9-10. Moreover, "[p]rotecting the Enterprise and its members from detention, apprehension and prosecution by law enforcement officers by using violence and threats of violence to dissuade potential witnesses from notifying or cooperating with authorities" has been charged as one of the "Means and Methods" of the racketeering enterprise. *Id.* at 5-6.

Defendant Mitchell seeks to exclude the Mitchell Letter on essentially two grounds: that it constitutes evidence of a "prior bad act" rendering it inadmissible under Federal Rule of Evidence 404(b), and that the danger of unfair prejudice resulting from its admission substantially outweighs any probative value under Rule 403. The Government opposes the Motion to Exclude on the grounds that the Mitchell Letter is not 404(b) evidence, but rather is evidence tending to prove the means and methods of the racketeering enterprise, and that, even if considered evidence under Rule 404(b), it is not being proffered to show Defendant Mitchell's bad character under 404(b)(1) but rather to show the permitted purposes delineated in 404(b)(2). ECF No. 191. Defendant Lassiter seeks to join Defendant Mitchell's request by virtue of his Motion to Adopt (ECF No. 173), which the Government opposes on the merits, but not as to the adoption thereof. *See* ECF No. 230 (Government's Omnibus Response to Defendant Lassiter's Motions).

Rule 404(b)(1) prohibits the presentation of evidence regarding prior bad acts of a defendant in order to prove the defendant's character. *See* Fed. R. Evid. 404(b) ("(1) Evidence

4

of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). However, evidence of conduct which is an element of a criminal offense or an act intrinsic to it is not 404(b) evidence, but rather evidence of the substantive crime. *United States v. Basham*, 561 U.S. F.3d 302, 326 (4th Cir. 2009). The Government argues that the Mitchell Letter constitutes such evidence. ECF No. 191 at 20-25. According to the Government, the Mitchell Letter directed former Co-Defendant Alvaughn Davis ("Davis"), another alleged member of NTG, to intimidate or kill the primary eyewitness to the December 27, 2015 Shell gas station robbery, a crime the Government argues was committed by Defendant Mitchell and Foye to obtain funds for the NTG enterprise. *Id.* at 21. Moreover, the Government contends, the direction in the letter to Davis to intimidate or kill the witness to the robbery is evidence of the means and manner of the racketeering enterprise to protect it from would-be witnesses. *Id.* Consequently, the Government contends that Rule 404(b) does not apply to the dispute because the evidence the Government seeks to introduce is related to, or intertwined with, the charged crimes. *See United States v. Palacios*, 677 F.3d 234, 244-45 (4th Cir. 2012) ("The Rule 404(b) inquiry, however, applies only to evidence of other acts that are extrinsic to the one charged. Acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence. Evidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial.") (citing *Basham*, 561 F.3d at 326) (quotation marks, alterations, and citations omitted). *See also United States v. Janati*, 374 F.3d 263, 270 (4th Cir.

5

2004) ("It is well established that when seeking to prove a conspiracy, the government is permitted to present evidence of acts committed in furtherance of the conspiracy even though they are not all specifically described in the indictment.").

The Court agrees. Here, the Mitchell Letter is intrinsic evidence of the charged crime – a RICO conspiracy to engage in a pattern of racketeering activity involving acts through an enterprise (NTG) that protected itself from prosecution through the use of violence and intimidation against potential witnesses. *See e.g.*, Second Superseding Indictment, ECF No. 121 at 5, Count I, ¶ 5(d) ("Protecting the Enterprise and its members from detection, apprehension, and prosecution by obstructing law enforcement's investigation of members of the Enterprise by witness intimidation and perjury"). Even if the evidence of potentially intimidating or harming a witness is not charged as an overt act, it may serve as "[e]vidence of uncharged conduct arising out of the same series of transactions as the charged offense, and[/or] evidence that 'served to complete the story of the crime on trial,'" which "'do not qualify as evidence of other crimes' subject to scrutiny under Rule 404(b)." *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012) (quoting *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994)). Here, the intimidation or harming of a possible witness against NTG and the accompanying tacit admission of guilt regarding the December 2015 Shell robbery "complete the story of the crime on trial," namely, the existence of a conspiracy to engage in a pattern of racketeering activity punishable under RICO.

Alternatively, even if Rule 404(b) *was* applicable, the Mitchell Letter would still be admissible for the permissible purposes of establishing motive and/or intent and plan under 404(b)(2). Fourth Circuit jurisprudence is instructive in this Rule 404(b) inquiry and Defendant Mitchell specifically relies on the case of *United States v. Queen*, 132 F.3d 991 (4th Cir. 1997).

Therein, the Fourth Circuit announced the four-part test which governs this Court's consideration of whether evidence of prior bad acts should be excluded:

> We hold that evidence of prior acts becomes admissible under Rules 404(b) and 403 if it meets the following criteria: (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). Defendant Mitchell argues that none of the factors militate in favor of admissibility under the *Queen* four-step analysis. First, the evidence is not relevant because the lack of factual similarity and temporal proximity between Defendant Mitchell's alleged authorship of the Mitchell Letter and the conduct alleged in the Second Superseding Indictment. ECF No. 140 at 4. With regards to the second factor, Defendant Mitchell simply states that "the Government has submitted no evidence at this point to explain this evidence is necessary for any proper purpose." *Id.* at 4-5. Defendant Mitchell argues that the third factor of reliability is not established because the context of the letter or its authenticity were never challenged because he was never charged with a crime related to witness intimidation or tampering, and only pleaded guilty to the substantive robbery offense discussed therein. Defendant Mitchell also raises questions as to the identity of the individuals referred to in the Mitchell Letter and concludes that because of these ambiguities, the admissibility of the Mitchell Letter would necessarily require a "mini-trial to explain these issues" and distract the jury from discharging their main duty of finding guilt or innocence. *Id.* at 5. With regards to the final *Queen* factor, Defendant Mitchell mistakenly articulated that "[a]ny minimal relevance the

7

Government provides would certainly be outweighed by the probative value of the letter," when he most certainly meant that any relevance was outweighed by unfair prejudice. ECF No. 140 at 5.

As to relevance, the first *Queen* factor, it is clear based on the excerpt provided in the Statement of Facts from Defendant Mitchell's previous case that the admissions disclosed in the Mitchell Letter are clearly relevant to the crimes charged, i.e., racketeering conspiracy, because they provide direct evidence that an overt act was done in furtherance of the conspiracy, to-wit, that Defendant Mitchell (and another member of NTG) committed the overt act of robbing the Shell gas station to benefit the enterprise, and that they conspired to intimidate a witness to that offense to protect the enterprise. The statements also constitute permissible evidence of consciousness of guilt or intent or motive, and thus are not offered to establish the general character of Defendant Mitchell.

With respect to the second *Queen* factor, evidence is necessary when, in considered in light of the other evidence available to the Government, it is an essential part of the crimes on trial or where it furnishes part of the context of the crime. It is obvious that the Mitchell Letter is referring to the December 27, 2015 Shell gas station robbery, which is an overt act done in furtherance of the conspiracy, namely, to fund the NTG enterprise with the robbery proceeds. The Mitchell Letter's discussions of the evidence against Defendant Mitchell and Foye are essential to the crimes charged in that such evidence forms an essential part of the crime (namely, that the members of the NTG enterprise committed crimes with the goal of funding the enterprise with the illegally gotten funds, and employed the use of intimidation of witnesses to protect the enterprise). This is especially true when the Court considers the language Defendant Mitchell chose to employ, specifically "I need Bro and whoeva [sic] else to be at my court date

8

so y'all can view the b*tch that will testify on *US*." ECF No. 198 (emphasis and capitalization added). The Court finds the use of the phrase "us" to be significant and necessarily probative of not only Defendant Mitchell and Foye's agreed involvement in the NTG criminal enterprise, but also that of "Bro and whoeva else."[5]

For the evidence to satisfy the reliability requirement encapsulated by the third *Queen* factor, "the evidence must be sufficient to allow the jury to 'reasonably conclude that the act[s] occurred and that the defendant was the actor.'" *United States v. Sterling*, 860 F.3d 233, 248 (4th Cir. 2017) (quoting *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995) (alteration in original) (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988))). By way of example, in *Sterling*, the Fourth Circuit found that in a former CIA operative's trial for unlawful retention of state secrets and related offenses, evidence that he had previously unlawfully retained other documents met the standard for reliability where "the government's evidence showed that the classified documents were found in Sterling's home pursuant to a valid search warrant, and there was no dispute that they were in fact classified or that Sterling had stored them in that location." *United States v. Sterling*, 860 F.3d 233, 248 (4th Cir. 2017). To the extent that Defendant Mitchell challenges the context of the Letter or its authenticity or raises questions as to the identity of the individuals referred to in the Letter, and that admissibility of the Mitchell Letter would necessarily require a "mini-trial to explain these issues, and distract the jury from discharging their main duty of finding guilt or innocence," such arguments are unpersuasive. Defendant Mitchell admitted to committing the Shell gas station robbery by pleading guilty to that charge, and adopting in his Statement of Facts the Letter at issue here.

---

[5] The Government's Opposition provides additional information and context to the Mitchell Letter, including the assertion that "Bro" referred to former Co-Defendant Davis. *See* ECF No. 191 at 121 ("The letter directed former codefendant Alvaughn Davis, a/k/a "L.B.," an NTG member, to intimidate or kill the primary eyewitness to the robbery, which was committed by Mitchell and another NTG member [Foye] to obtain money for the NTG Enterprise.").

Defendant Mitchell waived objection to the inclusion of the above-referenced excerpt of the Mitchell Letter in the agreed Statement of Facts to support his guilty plea in the previous case. Hence, the reliability of the Mitchell Letter cannot be seriously contested.

Finally, as to the fourth and final *Queen* factor, when determining the Rule 403 balancing issue, the Court must consider whether the probative value of the Mitchell Letter is "substantially outweighed by the confusion or unfair produce in the sense that it tends to subordinate reason to emotion in the fact finding process." *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). In *Queen*, the Fourth Circuit noted with approval that "in weighing the evidence under Rule 403, the district court concluded that while it was prejudicial, it was only prejudicial because it was so highly probative." *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997). The Court finds that the same conclusion applies to the contents of the Mitchell Letter.

As a result, even if the Mitchell Letter does not stand on its own as evidence intrinsic to the crimes charged, it should be admissible under Rule 404(b)(2). Accordingly, Defendant Mitchell's Motion to Exclude Mitchell Letter (ECF No. 139) should be **DENIED**. Additionally, because the Government does not object to the *adoption* of the Motion to Exclude Mitchell Letter via Defendant Lassiter's Motion to Adopt (ECF No. 173), the aforementioned Motion to Adopt (ECF No. 173) should be **GRANTED** as to the adoption, but **DENIED** as to the merits of the Motion to Exclude.

### B. Defendant Simmons' Motion to Strike Surplusage (ECF No. 146)

In his Motion to Strike Surplusage from Second Superseding Indictment and Memorandum in Support (ECF No. 146), Defendant Simmons seeks the removal of Paragraphs 10-14 of the Indictment, which constitutes the "Notice of Special Sentencing Factors," on the grounds that they amount to "surplusage" since the Government is not seeking the death penalty.

*See* ECF No. 121 at 11-12, ¶¶ 10-14. The Government opposes this Motion. ECF No. 191. Defendant Mitchell and Defendant Lassiter join in Defendant Simmons' request by virtue of their respective Motions to Adopt (ECF Nos. 157 and 170). The Government opposes Defendant Lassiter's Motion to Adopt on the grounds that the substantive Motion to Strike is meritless, but does not specifically oppose Defendant Lassiter's adoption thereof. *See* ECF No. 230 at 13-14.

The complained of portion of the Indictment provides:

### Notice of Special Sentencing Factors

10. On or about December 10, 2015, in the Eastern District of Virginia, the defendant, ANTONIO SIMMONS, a/k/a "Murdock," a/k/a "Doc," aided and abetted by others, both known and unknown, did murder Altariq Tynes, in violation of Section 18.2-32 of the Code of Virginia, to wit, the defendant killed Tynes and said killing was willful, deliberate, and premeditated, and said killing was done in the commission of, or attempt to commit, robbery.

11. On or about December 15, 2015, in the Eastern District of Virginia, the defendants, ANTONIO SIMMONS, a/k/a "Murdock," a/k/a "Doc," and NATHANIEL TYREE MITCHELL, a/k/a "Savage," aided and abetted by others, both known and unknown, did murder Vandelet Mercer, in violation of Section 18.2-32 of the Code of Virginia, to wit, the defendants killed Mercer and said killing was willful, deliberate, and premeditated.

12. On or about December 20, 2015, in the Eastern District of Virginia, the defendant, NATHANIEL TYREE MITCHELL, a/k/a "Savage," aided and abetted by others, both known and unknown, did murder Wayne Randolph Davis, in violation of Section 18.2-32 of the Code of Virginia, to wit, the defendant killed Davis and said killing was willful, deliberate, and premeditated.

13. On or about December 20, 2015, in the Eastern District of Virginia, the defendant, NATHANIEL TYREE MITCHELL, a/k/a "Savage," aided and abetted by others, both known and unknown, did murder Linda Marie Lassiter, in violation of Section 18.2-32 of the Code of Virginia, to wit, the defendant killed Lassiter and said killing was willful, deliberate, and premeditated.

>14. On or about December 21, 2015, in the Eastern District of Virginia, the defendant NATHANIEL TYREE MITCHELL, a/k/a "Savage," aided and abetted by others, both known and unknown, did murder Jamesha Roberts, in violation of Section 18.2-32 of the Code of Virginia, to wit, the defendant killed Roberts and said killing was willful, deliberate, and premeditated.

ECF No. 121 at 11-12, ¶¶ 10-14. Defendant Simmons argues that because the imposition of the death penalty has been removed from the realm of possible punishment for Defendants upon conviction, (*see* ECF Nos. 96-97), this "Notice" now serves no purpose and should be stricken. *See United States v. Regan*, 221 F. Supp. 2d 672, 680 (E.D. Va. 2002) (noting that a defendant may strike surplusage from an indictment if such surplusage is immaterial or irrelevant to the defendant's punishment) (citing Fed. R. Crim. P. 7(d); *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979) ("The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment ....")).

The Government opposes the Motion to Strike Surplusage, arguing that "the enhanced sentencing factors are not surplusage and do not relate to the death penalty." ECF No. 191 at 13. Rather, the Government argues that the enhanced sentencing factors apply to the RICO charge, which provides a statutory maximum sentence of twenty years in prison, or life in prison "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* (citing 18 U.S.C. § 1963(a) ("Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both . . .")). Specifically, the Government contends that the complained of paragraphs identify the underlying racketeering activity (to wit, acts involving murder under Virginia law), which would provide the basis for the enhanced sentence under RICO if the

12

Defendants are found guilty. Consequently, pleading these specific facts is necessary since they increase the statutory maximum sentence upon conviction. The Court agrees for the reasons articulated by the Government, as such aggravating factors must be included in the operative Indictment, and ultimately decided by the jury, if the Government wishes to seek the enhanced sentence under RICO.

The Court also notes that the allegations regarding the commission and circumstances of these five murders (of named victims Altariq Tynes, Wayne Randolph Davis, Vandelet Mercer, Linda Marie Lassiter, and Jamesha Roberts) appear elsewhere in the Indictment, and thus any prejudice argument is unpersuasive. *See* ECF No. 121 at 7-8, ¶ 9(a)-(d),(g)-(h),(m)-(n) ("(a) From in or about November 2015 to on or about December 10, 2015, SIMMONS, Foye, and others, both known and unknown, agreed and conspired to rob and kill Altariq Tynes. (b) On or about December 10, 2015, Foye used a firearm to shoot and kill Altariq Tynes. (c) On or about December 15, 2015, SIMMONS, MITCHELL, Foye, Davis, and others, both known an unknown, agreed and conspired to kill Vandalet Mercer. (d) On or about December 15, 2015, MITCHELL and Foye used firearms to shoot and kill Vandalet Mercer. . . . (g) On or about December 20, 2015, MITCHELL, Foye, and others, both known and unknown, agreed and conspired to kill Wayne Randolph Davis and Linda Marie Lassiter. (h) On or about December 20, 2015, MITCHELL and Foye used firearms to shoot and kill Wayne Randolph Davis and Linda Marie Lassiter. . . . (m) On or about December 21, 2015, MITCHELL and others, both known and unknown, agreed and conspired to kill Jamesha Roberts. (n) On or about December 21, 2015, MITCHELL used a firearm to shoot and kill Jamesha Roberts.") (capitalization in original).

Accordingly, Defendant Simmons' Motion to Strike Surplusage from Second Superseding Indictment (ECF No. 146) should be **DENIED**. Additionally, because the Government does not object to the adoption of this Motion to Strike via the Motions to Adopt Motion to Strike Surplusage filed by Defendant Mitchell (ECF No. 157) and Defendant Lassiter (ECF No. 170), the Motions to Adopt (ECF Nos. 157, 170) should be **GRANTED** as to the adoption, but **DENIED** as to the merits of the substantive Motion to Strike.

## II. RECOMMENDATIONS

Accordingly, the undersigned United States Magistrate Judge **RECOMMENDS** that

- Defendant Mitchell's Motion to Exclude Letter (ECF No. 139) should be **DENIED.**

- Defendant Lassiter's Motion to Adopt Mitchell's Motion to Exclude Letter (ECF No. 173) should be **GRANTED** as to the adoption but **DENIED** as to the merits.

- Defendant Simmons' Motion to Strike Surplusage from Second Superseding Indictment (ECF No. 146) should be **DENIED.**

- Defendant Mitchell's Motion to Adopt Simmons' Motion to Strike Surplusage (ECF No. 157) should be **GRANTED** as to the adoption, but the Motion to Strike Surplusage should be **DENIED** as to the merits.

- Defendant Lassiter's Motion to Adopt Simmons' Motion to Strike Surplusage (ECF No. 170) should be **GRANTED** because the Government does not oppose the adoption, but the Motion to Strike Surplusage should be **DENIED** as to the merits.

## III. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Fed. R. Civ. P. 6(a). A party may respond to

another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 13, 2017